## NATHAN WILLIAMS v. THE STATE.

1. TRIAL BY JURY.—When the evidence on the trial of a criminal cause tends to establish different and opposite conclusions, it is for the jury to find their verdict upon the evidence which, in their judgment, is entitled to most credit; and if the judge who tried the cause has refused to set aside a verdict of guilty found on such evidence, the conviction will not be disturbed in this court.

2. CIRCUMSTANTIAL EVIDENCE.—To authorize a conviction on circumstantial evidence, the circumstances should not only be consistent with the prisoner's guilt, but inconsistent with any other rational conclusion or reasonable hypothesis consistent with the facts proven.

APPEAL from Lamar. Tried below before the Hon. John C. Easton.

*Johnson & Miner*, for appellant.

*George Clark, Attorney General*, for the State.

REEVES, ASSOCIATE JUSTICE.—In this case the evidence shows that the gin-house of Mr. H. Parker, with the machinery and about seventeen bales of cotton in the building,

were destroyed by fire on the 29th January, 1873, between the hours of 9 and 10 o'clock at night, as stated by some of the witnesses, and as late as 11 o'clock, as stated by one witness. The witnesses had been asleep, and having no time-piece, or their clocks having stopped running, caused by the cold weather, the hour of the burning was not fixed with any certainty. The appellant was indicted, charged with the burning of the gin-house, and convicted by the jury, and his punishment assessed at ten years' imprisonment in the penitentiary. The grounds of his motion for a new trial are, that the verdict of the jury is against the law and the evidence, and not in accordance with the charge of the court. His motion was refused by the court, and he appeals, assigning for error the same grounds contained in the motion. There is no exception to any of the rulings of the court, nor to the instructions given by the court to the jury. No instruction was asked by defendant, and nothing is presented for consideration but the question of fact, whether the verdict is supported by the evidence.

The defendant, Williams, had lived on Parker's place, but had left there about a month or six weeks prior to the time the gin-house was burned, and was then living at one Patricks, about a mile distant from Parker's. The evidence is circumstantial, consisting of facts adduced on the trial and pointing to the accused as the guilty party, as contended by the prosecution. On the night of the fire the ground was covered with snow to the depth of four or five inches, as stated by one witness, and not so deep as that, as stated by another. A foot track was found coming in and going out from the gin-house lot next morning after the fire, there being no other track on that side of the house. The track was made by a No. 9 or 10 shoe. At the same time was found a pony's track coming to and going from the house, or near it. The track made by the pony is described as being round in front and the hind feet long and narrow, like a mule's foot, and the right

hind foot reeled out, the hind feet stepping some five or six inches over the fore-feet tracks. The defendant owned a pony having the same peculiarity of feet, and made the same sort of tracks in traveling. The witness Parker, the owner of the gin-house, had owned this pony and sold him to defendant. He had also sold to defendant a pair of shoes, described in his testimony as No. 10 Batchelor shoes. The right shoe was run down and turned out, and the tracks found near the gin on the morning after it was burnt corresponded with these shoes. This witness further said that he was satisfied that the pony track before described was made by defendant's pony; that the gin had not been used since the Friday preceding the burning, which was Tuesday or Wednesday; that no fire had been about the gin. Witness was in the gin-house between sundown and dark the evening before it was burnt; was not on good terms with defendant. It was proved by H. C. Knotts that he was at defendant's house in the morning after the fire; that defendant's pony had his legs covered with snow and ice half way up. This witness examined the tracks of the man and the tracks of the pony, and found them as described by the witness Parker; found a pony track coming to and going from the bridge, striking the big road at the bridge; course, south of west, about the course defendant lived from Parker's. Bob Hays heard defendant say he would like to put a match to Parker's gin; this was about two weeks before Christmas, while defendant was living with Parker. Sam. Harrison heard defendant say, "Before this time another year that old gin will be burnt up." The witness was smoking a pipe at the time, and it is not clear that the remark was not made in reference to that circumstance, and not, perhaps, as a threat. The same witness heard defendant say, while he lived at Parker's, that Parker would not settle with him, and that he intended to have satisfaction one way or the other.

The defendant proved that he was at home at about nine o'clock on the night the gin was burnt; that his wife rode his pony late in the evening and returned home about dark. On cross-examination the witness said he lived about one hundred and fifty yards from defendant's house, and only recognized his voice while singing; not certain as to the time; thinks the clock had run down. It was proved by another witness that defendant was at home on the night the gin was burnt until witness went to bed, and he supposed it to be about nine o'clock; that defendant could not have been absent long enough that night, up to the time witness went to bed, to have gone to the gin; had no time-piece. This witness lived in one of the rooms of the same house where defendant lived. It was proved by defendant's wife and daughter that defendant was at home at nine o'clock on the night the gin was burnt; that he was there when they went to sleep and when his wife awoke about midnight, and there in the morning. The pony was also at home next morning.

It is said that circumstantial evidence is often as strong and conclusive upon the understanding as direct and positive proof, and that all the law exacts from the jury in such a case is, that their minds should be satisfied beyond a reasonable doubt of the guilt of the prisoner. (Law v. The State, 33 Tex., 37.) Or, as laid down by Starkie, and quoted in Henderson v. The State, 14 Tex., 514: "What circumstances will amount to proof can never be matter of general definition. The legal test is the sufficiency of the evidence to satisfy the understanding and conscience of the jury. On the other hand, a juror ought not to condemn, unless the evidence excludes from his mind all reasonable doubt of the guilt of the accused." (Shultz v. The State, 13 Tex., 401; Brown v. The State, 23 Tex., 195.)

The evidence, if not conflicting, tended to establish different and opposite conclusions; and in such cases it is for the jury to find their verdict upon the evidence which, in

their judgment, is entitled to most credit. "And when, in a criminal case, the jury have seen fit to believe the witnesses for the State, in preference to those of the defendant, and the judge who tried the cause below has not seen fit to set aside the verdict of guilty on a motion for a new trial, the conviction will not be disturbed in this court." (Scal v. The State, 28 Tex., 491; Coats v. Elliott, 23 Tex., 613; Patton v. Gregory, 21 Tex., 519.) The jury were instructed to acquit, unless the evidence satisfied them, beyond a reasonable doubt, that the defendant was guilty; and on circumstantial evidence the court charged: "When a criminal charge is to be proved by circumstantial evidence, the proof ought to be not only consistent with the prisoner's guilt, but inconsistent with any other rational conclusion or reasonable hypothesis consistent with the circumstances and facts proven."

With the facts before them, and the law correctly charged, the jury have found the defendant guilty; and their verdict must stand on the principles often announced in former decisions of this court, some of which are cited in this opinion.

AFFIRMED.