23 195
85 572

## WILLIAM BROWN v. THE STATE.

An affidavit for a continuance by a defendant, (indicted for murder,) which stated, that he was "informed," that he could prove by certain witnesses, (named in the affidavit,) that there were two other men, were threatening the life of, and carrying weapons for, the deceased, at and before the time of his death; but which neither stated the source of his information, that he believed it to be true, nor disclosed whether or not he was informed of the names of the persons, thus said to have threatened, is not sufficient.

Extracts from commentaries upon the general nature of presumptive evidence, which are intended as directions to aid the mind in arriving at a correct conclusion; those, for instance, illustrating the precautionary considerations to be borne in mind in coming to a proper conclusion upon the facts, or the relative value to be given to circumstantial evidence, and duty of the jury to acquit, when less conclusive than the positive, direct evidence of one witness, are not rules of law to be obeyed, but of reason, to be considered.

Charges which embody such propositions as rules of instruction to the jury, are in opposition to the test of the sufficiency of proof established by Art. 640, Code Crim. Proc., viz., that the concurrent minds of a jury of twelve men shall be satisfied of the guilt of the prisoner, beyond a reasonable doubt; they are also opposed to Art. 643, Code Crim. Proc., which provides that the jury are the exclusive judges of the facts proved, and of the weight to be

given to the testimony, except, &c.; and also to Art. 594, 595, Code Crim. Proc., which forbid the judge to discuss the facts, or use arguments calculated to rouse the sympathy, or excite the passion of a jury, requiring of him to state plainly the law of the case; and such charges are properly refused.

APPEAL from Grimes. Tried below before the Hon. Peter W. Gray.

This was an indictment against the appellant, for the murder of Robert McIntyre. The indictment charged the killing to have occurred on the 6th day of March, 1858, in the county of Grimes.

The indictment was found on the 22d day of April, of the same year, and a trial had at the same term.

The defendant moved for a continuance of the case; the affidavit on which the application was based, in addition to the contents thereof, as recited in the opinion, further stated, that "this defendant did not know that he could prove these facts, or of the materiality of said testimony, in time, to have said witnesses brought into court; he is informed, and believes, that one, if not all, of these witnesses are in Harris county." The application was refused; to which the defendant excepted.

The testimony was wholly circumstantial. The reason assigned by the court, for the refusal of the charges asked by the defendant to be given, was, that they were sufficiently embraced in the general charges.

The general charges given by the court, contained an exposition of the difference between direct and circumstantial evidence; the pertinency and province of proof of facts, as circumstances tending to establish an issue, and that, "in order to find against the accused, you ought to be satisfied beyond a reasonable doubt, that he (defendant) killed him, (McIntyre,) that is—not beyond a possible doubt, or an imaginary doubt, nor beyond a doubt that might arise on a supposed case,—but it must be such a doubt as naturally presents itself to the mind, on the facts before you in evidence, and as would arise in the minds of men of good judgment and sense. All the material facts proved to your satisfaction, ought to lead to the conclusion that he did

the deed, to the exclusion of a reasonable belief that he did not, or that some other person did it. And if the evidence satisfies your minds and consciences, that the accused did kill the deceased, and does not show that some other person had a motive to do it, and might have done it, then it is sufficient to find the fact."

The jury found a verdict of guilty, and assessed the penalty at solitary confinement in the penitentiary for life. A motion for a new trial was overruled. Judgment in accordance with the verdict. Notice of appeal was given by the defendant; and sentence and execution of the judgment were reserved until the determination of the appeal.

*M'Adoo & Finley*, for the appellant.—This is a case of circumstantial evidence. Within one month after the alleged killing of M'Intyre, the appellant was indicted and put upon trial. During all of this time he had been confined in jail, without any means of hunting testimony in his defence. He had no counsel until just before he was put upon trial, and had no legal advice.

When the cause came on for trial, the defendant moved for a continuance, by affidavit, for want of testimony material to his defence. The affidavit shows that the witnesses were without the limits of the county, and that the materiality of their testimony did not come to his knowledge in time to have the witnesses brought into court by due process of law. This, we insist, was sufficient for a continuance, if the evidence proposed to be adduced was material to his defence.

Was the evidence of the witnesses, Prue Stucky, Lauderdale Stucky, and George Moore, material?

The entire evidence was circumstantial. The evidence proposed,—that there were other persons in the same community, who were, at the time of the killing, carrying arms for, and threatening the life of, the deceased,—if introduced, would have raised an hypothesis consistent with the defendant's innocence, and he was entitled to the benefit of every fact that could be in-

troduced to raise and support this hypothesis. (Cooper v. The State, 19 Texas Rep. 458.)

The case above cited, (Cooper v. The State,) is directly in point. In that case, (19 Texas Rep. 459,) we find this language: " When this was made the ground for a motion for a new trial, and the facts were before the court, and the character of the evidence seen, we think the materiality of the witness was so apparent, that a new trial ought to have been granted." By reference to the facts proposed to be proven in that case, it will be apparent that they are much less material than those proposed in this.

In the case cited, the court do not decide that the court below erred in refusing the continuance, *at the time it was asked,* nor do they decide the contrary. We submit the question, was it not error? Though the court could not judicially know that the case at bar would be a case of circumstantial evidence, in advance, yet the testimony was of a character that would be relevant in a large class of criminal causes. Of the relevancy of this testimony, it was the defendant's "province to judge." (19 Texas Rep. 459.)

The second point, to which we call the attention of the court is, the refusal of the district judge to give the special charges asked for by the defendant's counsel. The second charge asked was: " Circumstantial evidence ought to be received with great caution, especially when an anxiety is naturally felt for the detection of great crimes." In support of this charge, we refer to Roscoe's Criminal Evidence, p. 14.

The third special charge asked for was: " In trials for capital offences, the jury, upon circumstantial evidence, and where, such evidence is less conclusive than the positive and direct evidence of one witness, who testifies to the fact, must acquit the defendant."

" In no case, as it seems, ought the force of circumstantial evidence, sufficient to warrant a conviction, to be inferior to that which is derived from the testimony of a single witness, the lowest degree of direct evidence." (1 Starkie's Cr. Ev. 577.)

*Attorney-General*, for the appellee.

ROBERTS, J.—The affidavit for a continuance was not suffi-
cient.   The defendant states that he is "informed" that he can
prove by one Stucky and others, that there were two other men
threatening the life of, and carrying weapons for, the de-
ceased, at and before the time of his death.   He neither states
the source of his information, so as to enable the court to judge
of its reliability, nor does he even state that he believes it to be
true, nor does he disclose whether or not he is informed of the
names of the persons thus said to have been so threatening.

The evidence on the trial shows that there were two men, who
had previously been at enmity with M'Intyre.   Their reconcilia-
tion was fully shown; one of them was sworn as a witness, and
the other was proved to have left the state.   These may have
been the persons refered to in the affidavit.   It is not probable
that a serious difficulty could have existed with two other men,
extending to threats and carrying weapons, without M'Intyre's
neighbors, who were examined, knowing something about it.
Had this evidence been given on the trial, according to the in-
formation of the defendant, there is nothing proved in the case,
which could give it any pertinency or force.   So that considered,
at the time the affidavit was offered to obtain a continuance, or
with reference to the evidence on a motion for a new trial, under
the rule laid down in the case of Cooper v. The State, 19 Texas
Rep. 449, it was wholly insufficient to induce the court to act
upon it.

The point relied on, that the verdict is not warranted by the
evidence, cannot be sustained.   It would be useless to give a
summary of the facts, with their connection and coherence.   It
will suffice to say, that a train of circumstances have been indis-
putably established, which lead the mind irresistibly to the con-
clusion, that a murder has been committed, and that Brown is
the guilty perpetrator of it.

It is contended, that the court erred in refusing to give the

charges asked by the defendant, and particularly the second and third, which are as follows:—

" 2d. Circumstantial evidence ought to be received with great caution, especially where an anxiety is naturally felt for the detection of great crimes."

" 3d. The jury, upon circumstantial evidence, and where such evidence is less conclusive than the positive and direct evidence of one witness, who testifies to the fact, must acquit the defendant."

All the charges asked and refused were of a character, similar to those that have been just quoted. They are sentences taken from elementary authors, (Roscoe and Starkie,) in their Commentaries upon the general nature of presumptive evidence. They are intended as directions to aid the mind in arriving at a correct conclusion, and find a place equally appropriate in the philosophic treatises of Paley and Bentham, as in Roscoe and Starkie. They are not rules of law to be obeyed, but of reason, to be considered.

Our law has established, as the test of the sufficiency of the proof, that the concurrent minds of a jury of twelve men, shall be satisfied of the guilt of the prisoner, beyond a reasonable doubt. This test may be explained to the jury as matter of law, but any other test furnished for this, as a substitute for it, or variant from it, would be improper. (Code Crim. Proc., Art. 640.)

Not only is this standard fixed, but the jury are supposed to be adequate to the duty imposed upon them, of arriving at an enlightened conclusion, in applying this test, " The jury, in all cases, are the exclusive judges of the facts proved, and of the weight to be given to the testimony, except where it is provided by law, that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence." (Code Crim. Proc., Art. 643.) The exceptions illustrate the rule.

The jury are the exclusive judges of the weight to be given

to every part of the testimony, whether for, or against, the prisoner ; unless some part of the testimony has an artificial importance given to it by law, as the act of killing, unexplained, raises the presumption of the existence of another fact,—a malicious intent in the mind of the slayer ; or, unless a certain degree of weight is attached to a certain species of evidence, as that "a conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence, tending to connect the defendant with the offence committed." (Code Crim. Proc., Art. 653.)   It is the duty of the court to instruct the jury upon these legal presumptions and degrees of weight, in particular testimony, constituting exceptions to the general rule ; not because they may be in consonance with enlightened reason and experience, but because they are prescribed as rules of law, pertaining to the weight of evidence.   So far only is the court required to enlighten the jury upon the weight to be given to the testimony.

By the code, it is further provided, that the judge shall deliver a written charge, "in which he shall distinctly set forth the law applicable to the case; but he shall not express any opinion as to the weight of evidence, nor shall he sum up the testimony." "It is beyond the province of a judge, sitting in criminal causes, to discuss the facts, or use any argument in his charge, calculated to rouse the sympathy, or excite the passion of a jury.   It is his duty to state plainly the law of the case." (Code Crim. Proc., Art. 594, 595.)   Language can hardly be more emphatic, in separating and defining the respective provinces of the judge and of the jury.   The restrictions imposed on the judge, show that it was the intention of the legislature to prevent the jury from being influenced, in any way, by the opinion of the judge, however communicated, as to what facts are proved, and as to the proper weight to be attached respectively to those facts, or any of them.

If the court should undertake to instruct, or even advise, the jury, as to the proper process of reasoning upon the facts, or as to the precautionary considerations to be borne in mind in com-

14

ing to a proper conclusion upon the facts, by a dissertation, however it may be shaped, upon the nature and effect of evidence, his opinion upon the weight of the evidence may be infused into his charge upon the subject, and really influence the jury, by that mode of communicating it, as effectually, and sometimes more so, than a direct expression of it. The jury are bound to take the law from the court, and when the charge is made to embrace the rules of law and philosophic dissertations upon the nature of evidence, the jury are not always capable of distinguishing the one from the other. A charge, therefore, which extends beyond a plain statement of the *law* of the case, as required by the code, may invade the province of the jury, the full and independent exercise of which has been so plainly and earnestly sought to be protected by the legislature.

The charges asked by the defendant, in this case, do not come within any of the exceptions to the rule, that the jury are the exclusive judges of the weight of evidence, and therefore the court did not err in refusing to give them.

Judgment affirmed.